UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,    )
                             )   8:21-cr-286-JSM-NHA-1
          PLAINTIFF,         )   Tampa
                             )   April 25, 2025
          v.                 )   3:15 p.m.
                             )
JUAN GABRIEL RIOS-SILVA,     )
                             )
          DEFENDANT.         )

          TRANSCRIPT OF DEFENSE CLOSING ARGUMENT
       BEFORE THE HONORABLE JAMES S. MOODY, JR.
         UNITED STATES SENIOR DISTRICT JUDGE

APPEARANCES:

For the Government:
     MR. DANIEL M. BAEZA
     MR. MICHAEL LEATH
     United States Attorney's Office
     Suite 3200
     400 N. Tampa Street
     Tampa, FL 33602-4798

For the Defendant:
     MS. REBECCA CASTANEDA
     The Castaneda Law Firm
     506 North Armenia Avenue
     Tampa, FL 33609-1703

Also Present:  Gabriela Loncar and Beatriz Velasquez,
Interpreters


Court Reporter:          Tracey Aurelio, CRR, RMR, RDR
                         Federal Official Court Reporter
                         801 N. Florida Avenue, 15th Floor
                         Tampa, Florida 33602
                         (813) 301-5448

          Proceedings recorded by mechanical stenography,
transcript produced by computer.

_____

(Proceedings commenced at 3:15 p.m.)

THE COURT:  The defense may proceed.

MS. CASTANEDA:  Thank you, Your Honor.

CLOSING ARGUMENT

COUNSEL FOR THE DEFENSE

MS. CASTANEDA:  Good afternoon, ladies and gentlemen of the jury, the United States government, Your Honor.

I stood before you at the beginning of this case and told you that the government would fail to meet its burden of proof.  You aren't guilty because you are a Colombian and live by the sea.  You aren't guilty because you sell boat engines.

Intent is required for conviction.  The principle of reasonable doubt is the cornerstone of our criminal justice system.  It's the highest standard of proof known to the law designed to protect the innocent and ensure that no one is wrongly convicted in our country.

Today I stand before you to address the critical flaws of the government's case against my client, Mr. Juan Rios Silva.  The prosecution bears the burden of proving its case beyond a reasonable doubt, and they have failed to meet that burden.  The government has failed to establish a reliable chain of custody for the evidence presented in this case.

Chain of custody is a documented record of every

person who has handled every piece of evidence, including the date, time, and the reason for the handling.  The chain of custody is essential to ensure that the evidence is what the government claims it to be, that has not been tampered with, altered, confused or is missing.  There is reasonable doubt in this case that that occurred.

In this case you've heard from the Coast Guard who interdicted boats and the Drug Enforcement Administration who processes contraband or cocaine.  They discussed their job duties and what is required of them.  They discussed boat interdictions.  But the government did not provide sufficient testimony or documentation to demonstrate that what was on board was cocaine and that those boats were related to Mr. Juan Rios-Silva and that those engines on those boats were related to Mr. Juan Rios-Silva.

There is reasonable doubt, but I don't want you to focus on the cocaine.  You heard from the Coast Guard and the DEA, but this case revolves around engines.  That is the chain of custody I want you to focus on.  This case involves whether my client sold engines knowingly to Colombian Narco traffickers knowing that they were going to violate the law.  That's what's required for the United States to convict him.

You heard from Mr. Dwayne Denny.  He testified today. He testified about where serial numbers are located, where they should be on boat engines.  They're missing.  He

testified about the age, the wear and the tear on different boats presented in this case as well as their engines.  There is reasonable doubt in this case.

For the chain of custody for an engine, I want you to think about where an engine allegedly comes from.  What is the impetus for someone to say that they sold an engine?  You heard multiple Colombian drug traffickers say they bought these engines from Mr. Juan Rios.  Some testified they bought from him.  Some testified they bought engines from his brother, Milton.  Some testified that they bought engines from other people.  There is reasonable doubt in this case.

Two witnesses from Buena Ventura, Colombia, Juan David Moreno-Bonilla and Jhon Caicedo-Valencia said they bought engines from Juan in Buena Ventura.  Juan's brother Harrison has a shop in Buena Ventura.  Juan doesn't.  His shop is in Cali.  You heard that from Milton.  He testified that Harrison, a different brother, has a shop in Buena Ventura.

On the second day of trial, you heard testimony from multiple Colombians.  They were asked to identify Mr. Rios in court.  Not great at math, but he is less than 20 feet away from whoever was testifying.  I want you to remember how long it took them to identify him.  One could not identify him at all.  Another took a very long time to do so.  That's because they don't know him.

These are drug traffickers from Colombia.  You know

who you're dealing with.  You don't forget a face.  You're trafficking large amounts of cocaine.  This is a dangerous business.  You remember people, places, things, dates, drug amounts, and you remember faces.  Most if not all witnesses testified that Tumaco is a small town.  Fishing is one of the main livelihoods in that area.  There is one main strip through that town.

These Colombian drug traffickers have been housed with other Colombian drug traffickers since their arrest.  You heard testimony they are housed in the same area of the jail in Colombia called Picota.  That's in Bogota, Colombia, and that's where they're held before they are extradited to the United States.  You heard testimony that they're all in the same area.  And then here in the United States they are also housed together.  They share cells, jail patios.  They eat their meals together.  They play soccer together.

One of the witnesses admitted that he had a phone in jail.  It's obvious they were following some sort of script that they shared.  They are not credible.  There is reasonable doubt.

One of the witnesses testified there is no cartel in Colombia.  Then the case agent testified there is.  That was my first question to her.  When you are investigating drug cases, the credibility of witnesses is so important.  Because as you saw, anyone could testify to anything.

You heard from James Krause.  He was an HSI special agent with Operation Panama Express for 18 years.  He prosecuted cases his whole career.  He described in detail how to investigate drug trafficking cases, how to investigate drug trafficking cases in Colombia, how FBI, DEA, and HSI work together, how they read each other's reports.  They sit on each other's interviews, and they arrest people together.

He testified how if an agent is unavailable, someone else fills in.  He testified how confidential sources are used to develop information and targets, how those sources receive payments.  Those payments are awards when there are interdictions, and about the importance of interviewing people face to face.  He testified drug traffickers don't go around saying they're putting drugs on boats because there are overhearers.  He testified how they go up through leadership through a drug organization by building trust over time.

When Mr. Rios was arrested here in the United States, he was shocked.  Of course he was.  He believed he was going to meet somebody named Sharke' that he thought was a DEA agent.

You heard from John Ferdella, the last witness to testify.  It turns out that Sharke' was a DEA agent -- excuse me -- an informant, HSI informant and an FBI informant. Mr. Rios was held at the airport with his wife, and what did he do?  He tried to explain.  He tried to talk immediately.

In his postarrest interview, he said he was working for a man named Sharke' who he believed was a DEA agent.

He had two other meetings with law enforcement over the course of about a year.  Mr. Rios spoke with law enforcement three times.  He tried to explain all of the allegations the United States has made in this case.

MR. BAEZA:  Objection.  Not in evidence, Your Honor, regarding meetings with law enforcement.

THE COURT:  Sustained.

MS. CASTANEDA:  Let's talk about Milton for a second. That's the defendant's brother, one of them.  He testified on cross-examination that he was indicted after he tried to prove his brother's innocence in a deposition with the United States government.  He testified that he was talking to his brother about engines after the pandemic in one of the phone calls that the United States government played.

During that phone call, he asked his brother about when engines would be arriving.  Quote, there was a client who would be possibly buying them from me, "me" being Milton.

He was asked about a second phone call the United States government played.  Milton testified it was a call between Milton and Harrison who lives in Buena Ventura and is not Mr. Juan Rios.  He testified that Harrison had asked Milton about engine quotes.  Harrison is not Juan.

Milton was asked about his prior deposition and asked

why he lied during the deposition.  He responded, well, due to fear, due to fear of me being associated beyond perhaps my role in all of this.  The defendant testified as well as his brother Milton that they split their businesses in 2013.

Milton also testified, "And in your plea agreement isn't it true that you pled guilty to conspiring with your brother?"

Milton responds, "Well, in the agreement I'm included with my brother.  And as I said, I'm here to clarify my situation, and I hope that my brother also clarifies his."

Today is the first day that Mr. Juan Rios has been able to clarify his situation.  The credibility of the witnesses, particularly the federal agent working this case is another critical issue I want you to consider.  The government's case relies heavily on the testimony of this agent.  Yet, evidence has been presented that the agent was not honest in her reporting.

Mr. Rios's prior counsel from Miami, Frank Prieto, flew up and sat right there and told you his version of the facts of what occurred that day.  And you heard from the defendant himself.  I want you to recall the answers the agent gave to my questions and how she presented in court and how she investigated this case.

I want you to recall the interactions that were described between the defendant and the agents when he was

arrested and the interactions with Mr. Rios's wife.

The government's failure to establish a proper chain of custody and the credibility issues surrounding its witnesses creates significant reasonable doubt.

Reasonable doubt is based on common sense and reason. In this case, the government's inability to prove the integrity of its evidence and the reliability of its witnesses leaves with you no choice but to find my client not guilty. You have to have intent to be convicted. You have to have knowingly committed a crime to be convicted.

The United States has failed to prove that Mr. Rios is guilty as charged. I ask that you find my client not guilty.

Thank you for your time and your consideration.

(Proceedings concluded at 3:27 p.m.)

UNITED STATES DISTRICT COURT    )
                                )
MIDDLE DISTRICT OF FLORIDA       )

### REPORTER TRANSCRIPT CERTIFICATE

     I, Tracey Aurelio, Official Court Reporter for the United States District Court, Middle District of Florida, certify, pursuant to *Section 753, Title 28, United States Code*, that the foregoing is a true and correct transcription of the stenographic notes taken by the undersigned in the above-entitled matter (Pages 1 through 10 inclusive) and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States of America.

                                /s    *Tracey Aurelio*
                                _____
                                Tracey Aurelio, RMR, RDR, CRR
                                Official Court Reporter
                                United States District Court
                                Middle District of Florida
                                Tampa Division
                                Date:  July 1, 2025